ANTHONY CIE *et al.*, Indiv. and Purportedly on Behalf of Other Persons Similarly Situated, Plaintiffs-Appellants, v. COMDATA NETWORK, INC., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—93—1157

Opinion filed September 28, 1995.

Larry M. Dreyfus and Beigel & Sandler, both of Chicago (Philip Fertik and Ronald A. Schy, of counsel), for appellants.

Ross & Hardies (David P. Boyd and Amy B. Manning, of counsel), Kirkland & Ellis (Leonard A. Gail and Jeffrey A. Leon, of counsel), The First National Bank of Chicago (Judy A. Lepri, of counsel), Keck, Mahin & Cate (Richard J. Jacobson, of counsel), and Neal, Gerber & Eisenberg (Phil C. Neal, of counsel), all of Chicago, and Howard & Howard, of Kalamazoo, Michigan (John W. Allen, of counsel), for appellees.

JUSTICE S. O'BRIEN delivered the opinion of the court:

Plaintiffs appeal the dismissal of their complaints for failure to state a cause of action. They ask this court to construe section 28—7(a) of the Criminal Code of 1961 (hereafter the Gambling Act) (Ill. Rev. Stat. 1991, ch. 38, par. 28—7(a) (now 720 ILCS 5/28—7(a) (West 1994))) as making all loans for gambling void and unenforceable in Illinois, to reverse the dismissal, and remand the cause to the trial court. We affirm.

Plaintiffs obtained loans at legal gambling establishments in the form of "cash advances" on their credit cards purportedly for the purpose of gambling in those establishments. To get a cash advance, plaintiffs ran a credit card through a card reader attached to a "Comchek" apparatus at or near a gambling cage owned and maintained by defendant Comdata Network, Inc. (Comdata). The Comchek apparatus would issue a check, drawn on a Comdata account, which plaintiffs would endorse in exchange for gambling chips, betting vouchers, or cash.

Comdata received fees under agreements with the other defendants (collectively, the Credit Card Defendants), all of which are financial institutions that issue credit cards.

Plaintiff Anthony Cie used cash advances for pari-mutuel betting on horses in racetracks and off-track betting parlors within Illinois. Plaintiffs Michael Owcarz and Milton Rosenblum used cash advances to gamble in Nevada casinos. None of the gambling could lead to criminal conviction in the State where it occurred.

■ The parties present two issues for review. First, as to plaintiff Cie, whether cash advances for legalized gambling within the State of Illinois are void and unenforceable under section 28—7(a) of the Gambling Act (Ill. Rev. Stat. 1991, ch. 38, par. 28—7(a) (now 720 ILCS 5/28—7(a) (West 1994))) and as a matter of public policy. And second, as to plaintiffs Owcarz and Rosenblum, whether cash ad-

vances for legalized gambling outside the State are unenforceable in Illinois courts under section 28—7(a), as a matter of public policy and pursuant to the commerce clause (U.S. Const., art. I, § 8, cl. 3). Section 28—7(a) of the Gambling Act reads:

> § 28—7. Gambling contracts void. (a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void." Ill. Rev. Stat. 1991, ch. 38, par. 28—7(a) (now 720 ILCS 5/28—7(a) (West 1994)).

## I

Plaintiff Cie first contends that all loans for the purpose of gambling, except those covered by section 28—7(d) of the Gambling Act, are void and unenforceable in Illinois pursuant to the rule of statutory construction *expressio unius est exclusio alterius.* Under this maxim, a statute which specifies one exception to a general rule excludes other exceptions by implication.

Section 28—7(a) expresses the general rule that gambling contracts "where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void." (Ill. Rev. Stat. 1991, ch. 38, par. 28—7(a) (now 720 ILCS 5/28—7(a) (West 1994)).) Subsection (d) excepts extensions of credit to gambling patrons by licensed riverboat casino operators from this rule. Cie argues that because the legislature enacted subsection (d) no other creditor may recover such debts. We disagree.

The plain language of section 28—7(a) limits its applicability to those contracts in which the lender participated in the unlawful gambling enterprise. There was no wager between Cie and the defendants herein. Instead, the Credit Card Defendants advanced Cie a loan through their agent, Comdata, which was to be repaid regardless of whether Cie won or lost. For Cie to claim this transaction is an illegal gambling contract misses the entire process of how the debt was incurred—pursuant to a cardholder's agreement wherein the card issuer promises to advance the cardholder funds up to a given limit and the cardholder promises to repay the loan (presumably with interest). (See *National Recovery System, Division Assignee of Caesars Tahoe Corp. v. Kasle* (E.D. Mich. 1987), 662 F. Supp. 139, 141.) This is a simple contract having nothing whatever to do with gambling. Accordingly, the general rule regarding gambling contracts

in section 28—7(a) does not apply to cash advances such as those obtained by plaintiff Cie. Because the general rule of section 28—7(a) does not apply, the exception to the rule enumerated by subsection (d) does not implicate *expressio unius est exclusio alterius* to void Cie's debts to defendants.

■ Plaintiff Cie next argues that loans for legalized gambling are void and unenforceable under section 28—7(a) of the Gambling Act as a matter of public policy. In support of his contention, Cie argues that all loans for the purpose of gambling were held to be void and unenforceable under section 28—7(a)'s predecessor statute (Ill. Rev. Stat. 1961, ch. 38, par. 329 (repealed eff. January 1, 1962)), and that the recodification effected no change in this State's public policy towards such loans.

Section 28—7(a) was adopted by the Illinois legislature in 1961 as part of a complete recodification of the Illinois Criminal Code. In reference to the recodification, Charles Bowman, chairman of the Illinois State Bar Association's section on criminal law in 1961 and a member of the Joint Committee to Revise the Illinois Criminal Code, as well as its spokesman to the General Assembly, stated:

> "While the new code redefines practically all criminal offenses in the first 600 sections of the present chapter 38, there are no radical changes in the present law. Perhaps its most significant characteristics are the unified arrangement by article and section, and the direct, concise use of modern language.
>
> *** The Committee Comments *** supply detailed explanations regarding [the changes in] each section." (Bowman, *The Illinois Criminal Code of 1961*, 50 Ill. B.J. 34, 36 (1961).)

Any mention of an intent to change the scope or application of section 28—7(a) from prior law is conspicuously absent from its committee comments. The foregoing notwithstanding, public policy varies with changes in legislation (*Routt v. Barrett* (1947), 396 Ill. 322, 340, 71 N.E.2d 660, 669), and the language of section 28—7(a) is substantially different from that of its predecessor statute, which read:

> "All promises, *** where the whole or any part of the consideration thereof, shall be for any money, property or other valuable thing, won by any gaming, or playing at cards, dice, or any other game or games, or by betting on the side or hands of any person gaming, or by wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, or for the reimbursing or paying any money or property knowingly lent or advanced at the time and place of such play or bet, to any person or persons so gaming or betting, or that shall, during such play or betting, so play or bet, shall be void and of no effect." (Ill. Rev. Stat. 1961, ch. 38, par. 329 (repealed as of January 1, 1962).)

Notably, the present section 28—7(a) omits the language voiding all contracts "for the reimbursing or paying any money or property knowingly lent or advanced" for the purpose of gambling. This omission suggests a change in Illinois public policy towards gambling on credit since under section 28—7(a) mere knowledge by one party that money loaned to another is to be used for the purpose of gambling does not invalidate the transaction. Likewise, the present section 28—7(a) omits "at the time and place of such play or bet." Accordingly, under section 28—7(a), the mere fact that the Credit Card Defendants provide cash advances on credit cards through their agent Comdata at or near legal gambling establishments does not void the cardholder's agreement to repay the debt.

In addition, section 131 voided "[a]ll" gaming contracts (Ill. Rev. Stat. 1961, ch. 38, par. 329) whereas section 28—7(a) voids only those contracts "where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained *in violation of*" the Gambling Act. (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 28—7(a) (now 720 ILCS 5/28—7(a) (West 1994)).) The offense of gambling is defined in section 28—1 of the Gambling Act. (Ill. Rev. Stat. 1991, ch. 38, par. 28—1 (now 720 ILCS 5/28—1 (West 1994)).) This section, too, has undergone dramatic changes since 1961 and now reads, in pertinent part:

"§ 28—1. Gambling. (a) A person commits gambling when he:

(1) Plays a game of chance or skill for money or other thing of value, unless excepted in subsection (b) of this Section; or

(2) Makes a wager upon the result of any game, contest, or any political nomination, appointment or election; or
***

(4) Contracts to have or give himself or another the option to buy or sell, or contracts to buy or sell, at a future time, ***; however, the issuance, purchase, sale, exercise, endorsement or guarantee, by or through a person registered with the Secretary of State pursuant to Section 8 of the Illinois Securities Law of 1953, or by or through a person exempt from such registration *** is not gambling within the meaning of this paragraph (4)[.]
* * *

(b) Participants in any of the following activities shall not be convicted of gambling therefor:
* * *

(3) Pari-mutuel betting as authorized by the law of this state;
***

(5) The game commonly known as 'bingo,' when conducted in accordance with the Bingo License and Tax Act;

(6) Lotteries when conducted by the State of Illinois in accordance with the Illinois Lottery Law;

\*\*\*

(8) Raffles when conducted in accordance with the Raffles Act;

(9) Charitable games when conducted in accordance with the Charitable Games Act;

(10) Pull tabs and jar games when conducted under the Illinois Pull Tabs and Jar Games Act; or

(11) Gambling games conducted on riverboats when authorized by the Riverboat Gambling Act." Ill. Rev. Stat. 1991, ch. 38, par. 28—1 (now 720 ILCS 5/28—1 (West 1994)).

Citing the phrase "shall not be convicted of gambling therefor," Cie argues that subsection (b) merely puts limits upon conviction for acts which nevertheless constitute a violation of subsection (a). A "non-prosecutable violation," he suggests, is not the same as a "non-violation" and still implicates section 28—7(a) so as to void all contracts therefor. As defendants correctly point out, this argument fails because it ignores the "unless" clause in subsection 28—1(a) from which it is clear that the types of gambling listed in subsection 28—1(b) are expressly excepted from the definition of gambling.

Cie counters that there is a key difference between subsections 28—1(a)(1) (plays a game) and 28—1(a)(2) (makes a wager). He points out that the "unless" clause appears only in subsection 28—1(a)(1) and hence argues it does not apply to pari-mutuel betting which falls under subsection 28—1(a)(2). Nor, Cie points out, does subsection 28—1(a)(2) state that pari-mutuel betting "is not gambling within the meaning of this paragraph" as subsection 28—1(a)(4) does for the issuance of some kinds of futures contracts. Thus, Cie concludes, pari-mutuel betting is "in violation of" section 28—1(a)(2), albeit non-prosecutable under section 28—1(b)(3), for which all contracts are void under section 28—7(a).

While we agree the legislature could have written the statute more clearly, the "unless" clause must nevertheless be read within the context of section 28—1. (*People ex rel. Brenza v. Gebbie* (1955), 5 Ill. 2d 565, 578, 126 N.E.2d 657, 664.) Read thusly, subsection 28—1(b)(6) (concerning Illinois State Lottery) must operate as an exception to sections 28—1(a)(1) (which prohibits playing a game of chance or skill), 28—1(a)(2) (which prohibits making a wager upon the result of any game), 28—1(a)(5) (which prohibits possession of any money wagered) and 28—1(a)(7) (which otherwise would criminalize sale and promotion of Illinois State Lottery tickets). Similarly, section 28—1(b)(11) (concerning Illinois riverboat casino gambling) must operate as an exception to sections 28—1(a)(1), 28—1(a)(2), 28—1(a)(3) (which

prohibits operating or using any gambling device), and section 28—1(a)(5). And section 28—1(b)(3) (concerning Illinois pari-mutuel wagering) must operate as an exception to sections 28—1(a)(1), 28—1(a)(2), 28—1(a)(5) and 28—1(a)(6) (which otherwise would criminalize pari-mutuel horse racing for both racetrack operators and patrons).

Moreover, the amendments to section 28—1(b) directly reflect changes in the State's overall statutory scheme regarding gambling. Subsection 28—1(b)(3) and the "in violation of" requirement of section 28—7(a) were simultaneously enacted as part of the Criminal Code of 1961. Thereafter, Public Act 77—331 added subsection (b)(5) and Public Act 77—332 concurrently created the Bingo License and Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 1101 *et seq.* (now, as amended, 230 ILCS 25/1 *et seq.* (West 1994))); Public Act 78—20, 3d Special Session, added subsection (b)(6) and the Illinois Lottery Law (Ill. Rev. Stat. 1975, ch. 120, par. 1151 *et seq.* (now, as amended, 20 ILCS 1605/1 *et seq.* (West 1994))); Public Act 81—1365 added subsection (b)(8) and the Raffles Act (Ill. Rev. Stat. 1981, ch. 85, par. 2300 *et seq.* (now, as amended, 230 ILCS 15/0.01 *et seq.* (West 1994))); Public Act 84—1303 added subsection (b)(9) and the Charitable Games Act (Ill. Rev. Stat. 1987, ch. 120, par. 1121 *et seq.* (now, as amended, 230 ILCS 30/1 *et seq.* (West 1994))); Public Act 85—1012 added subsection (b)(10) and the Illinois Pull Tabs and Jar Games Act (Ill. Rev. Stat. 1989, ch. 120, par. 1051 *et seq.* (now, as amended, 230 ILCS 20/1 *et seq.* (West 1994))); and Public Act 86—1029 added subsection (b)(11) and the Riverboat Gambling Act (Ill. Rev. Stat. 1991, ch. 120, par. 2401 *et seq.* (now, as amended, 230 ILCS 10/1 *et seq.* (West 1994))). Accordingly, the "unless" clause of section 28—1(a)(1), which implicates the exceptions enumerated in section 28—1(b), must also be read within the context of sections 28—1(b)'s companion statutes. In other words, the "unless" clause must be read within the context of the State's overall statutory scheme regarding gambling.

In so doing, we note at the outset that Illinois public policy towards gambling on credit has not changed simply because certain types of gambling are now legal. (*King International Corp. v. Voloshin* (1976), 33 Conn. Supp. 166, 167, 366 A.2d 1172, 1173; *Casanova Club v. Bisharat* (1983), 189 Conn. 591, 458 A.2d 1; *Resorts International, Inc. v. Zonis* (N.D. Ill. 1984), 577 F. Supp. 876, 878.) However, each public act authorizing a new form of gambling makes some reference or allusion to section 28—7(a). For example, section 41 of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1975, ch. 8, par. 37—41 (now 230 ILCS 5/41 (West 1994))), states that article 28 "shall not apply to pari-mutuel or certificate wagering in manner and form as provided by this Act." Section 15 of the Illinois Lottery Law (Ill.

Rev. Stat. 1975, ch. 120, par. 1165 (now 20 ILCS 1605/15 (West 1994))) likewise declares that no other law providing any penalty shall apply to the sale of tickets pursuant thereto. If the statutory scheme of the Gambling Act and the Illinois Horse Racing Act of 1975, and the Illinois Lottery Law are to be consistent, therefore, the legislature must have intended subsections (b)(3) and (6) of section 28—1 to except such types of wagering from the definition of types of gambling which are "in violation of" the Gambling Act.

Subsections 4.1 and 4.2 of the Bingo License and Tax Act (Ill. Rev. Stat. 1991, ch. 120, pars. 1104.01 and 1104.2 (now 230 ILCS 25/4.1, 4.2 (West 1994))) are similarly informative in that the former distinguishes bingo from "illegal gambling" and the latter subjects persons who conduct bingo games without a license or permit to a fine as well as "other penalties provided." We interpret this to mean that bingo games conducted in accordance with the Bingo License and Tax Act are not "in violation of" article 28, since all other bingo games are subject to the "penalties provided" presumably by article 28 of the Criminal Code of 1961.

Section 1 of the Raffles Act (Ill. Rev. Stat. 1981, ch. 85, par. 2301 (now 230 ILCS 15/1 (West 1994))) defines "raffle" as a form of lottery "as defined in Section 28—2(b) of the 'Criminal Code of 1961.' " We believe this direct reference to section 28—2(b) by a statute legalizing raffles indicates the legislature's intent in adding subsection (b)(8) was to except them from the definition of types of gambling which are "in violation of" the Gambling Act.

But perhaps the most telling are section 7(b) of the Charitable Games Act (Ill. Rev. Stat. 1987, ch. 120, par. 1127(b) (now 230 ILCS 30/7(b) (West 1994))), section 6 of the Illinois Pull Tabs and Jar Games Act (Ill. Rev. Stat. 1989, ch. 120, par. 1056 (now 230 ILCS 20/6 (West 1994))), and section 7(2) of the Riverboat Gambling Act (Ill. Rev. Stat. 1991, ch. 120, par. 2407(2) (now 230 ILCS 10/7 (West 1994))), each of which uses the identical "violation of" language employed by section 28—7(a) of the Gambling Act. Section 7(b) of the Charitable Games Act prohibits the issuance of a license to individuals who have been convicted of "a violation of" article 28. Section 6 of the Illinois Pull Tabs and Jar Games Act prevents entry on the gaming premises of anyone convicted of "a violation of" article 28. And under section 7(2) of the Riverboat Gambling Act, a person is ineligible for a riverboat gambling license if he has been convicted of any "violation of" article 28. Were we to read section 28—1 as plaintiffs suggest, no license could ever issue under the Charitable Games Act or Riverboat Gambling Act and no one could ever enter the premises upon which pull tab and jar games were conducted since the games themselves

would prevent it. We are bound to presume that such absurd consequences were not contemplated by the legislature. See, *e.g., Illinois Chiropractic Society v. Giello* (1960), 18 Ill. 2d 306, 312, 164 N.E.2d 47, 51.

Nor does Cie's argument that subsection 28—7(a)(2)'s failure to state that pari-mutuel betting "is not gambling within the meaning of this paragraph," as subsection (a)(4) does for the issuance of some kinds of futures contracts, support his conclusion that pari-mutuel gambling is "in violation of" the Gambling Act. Rather, when viewed in context, the omission supports our conclusion that the exceptions enumerated in section 28—1(b) were intended by the legislature to apply to section 28—1(a)(2). Unlike pari-mutuel betting, which is covered by section 28—1(b)(3), no subsection of section 28—1(b) addresses futures contracts. Thus, unlike pari-mutuel betting, the clause in subsection (a)(4) stating that issuance of certain types of futures contracts "is not gambling within the meaning of this paragraph" was needed to except those acts from the statutory definition of gambling "in violation of" the Gambling Act.

For the foregoing reasons, even if we assumed, *arguendo*, that loans for the purpose of legalized gambling are gambling contracts within the meaning of section 28—7(a), we nevertheless conclude that legalized gambling is not gambling "in violation of" the Gambling Act. Accordingly, section 28—7(a) does not operate to void loans therefor. This holding is consistent with the recent case of *Moushon v. AAA Amusement, Inc.* (1994), 267 Ill. App. 3d 187, 192, 641 N.E.2d 1201, 1204, which held that sections 28—1(b) and 28—8 of the Gambling Act, taken together, properly provide for a cause of action for a loser at gambling *prohibited* by section 28—1, but not for the loser at gambling *exempted* under section 28—1(b).

## II

■ On appeal, plaintiffs Owcarz and Rosenblum argue that cash advances for legalized gambling outside the State are unenforceable in Illinois courts under section 28—7(a), as a matter of public policy and pursuant to the commerce clause. We disagree.

Section 1—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 1—5 (now 720 ILCS 5/1—5 (West 1994))) limits Illinois' jurisdiction to cases in which an element of the crime occurs within its borders. If an offense is defined solely in terms of conduct without regard to any result, there is no jurisdiction based on where the conduct causes harm. (*People v. Holt* (1982), 91 Ill. 2d 480, 484-88, 440 N.E.2d 102, 103-05.) All of the Illinois gambling offenses are defined by conduct, not results. (See, *e.g.,* Ill. Rev. Stat. 1991, ch. 28, par. 28—

1(a) (now 720 ILCS 5/28—1(a) (West 1994)).) Because of section 1—5, therefore, article 28 of the Criminal Code simply does not apply to gambling committed wholly outside of Illinois and defendant's conduct in Nevada was not "in violation of" the Gambling Act. (*People v. Bovinett* (1979), 73 Ill. App. 3d 833, 835, 392 N.E.2d 428, 429.) Accordingly, section 28—7(a) does not operate to void loans therefor.

Moreover, we reject the analysis in *Resorts International, Inc. v. Zonis*, 577 F. Supp. 876, wherein the court refused to enforce a gambling debt incurred by an Illinois resident at a New Jersey casino because that debt was purportedly contrary to Illinois' "general public policy against gambling." (577 F. Supp. at 878.) In reaching that result, *Zonis* misconstrued Illinois' public policy concerning loans for the purpose of legalized gambling. All of the Illinois cases cited in *Zonis* as the basis for that court's ruling applied section 28—7(a)'s predecessor statute, *not* section 28—7(a) which, as previously discussed, is fundamentally different. In addition, *Zonis* cited two Connecticut cases that invoked "the long-established policy of [that] state condemning gambling on credit." (*Zonis*, 577 F. Supp. at 878-79, citing *King International Corp. v. Voloshin* (1976), 33 Conn. Supp. 166, 366 A.2d 1172, and *Casanova Club v. Bisharat* (1983), 189 Conn. 591, 458 A.2d 1.) But neither of those Connecticut cases can be used to characterize Illinois' current public policy concerning loans for the purpose of legalized gambling. Unlike section 28—7(a), Connecticut law expressly renders void any loan knowingly made for gambling. In short, section 28—7(a), and not antiquated cases applying long-since repealed statutes, states Illinois' current public policy concerning loans for the purpose of legalized gambling. As previously discussed, such a contract is one for the accomplishment of a legal objective not in conflict with section 28—7(a) or other Illinois gambling laws and therefore enforceable. See, generally, *NevCal Enterprises, Inc. v. Cal-Neva Lodge, Inc.* (1961), 194 Cal. App. 2d 177, 182, 14 Cal. Rptr. 805, 808.

Finally, we agree with the court in *Connecticut National Bank v. Kommit* (1991), 31 Mass. App. Ct. 348, 351, 577 N.E.2d 639, 641, that it would be commercially unreasonable to have each incident of use of a bank's credit cards controlled by the law of the forum of the specific transaction. (See Restatement (Second) of Conflicts § 6(2)(g) & Comment *j* (1971) (choice-of-law rules should lead to "desirable results").) Accordingly, we find that enforcement of the debt does not violate commerce clause constraints.

For the foregoing reasons, we affirm the order of the trial court dismissing plaintiffs' complaint for failure to state a cause of action.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.