**Lillie VINSON, Plaintiff–Appellant,**

v.

**CASINO QUEEN, INC., Defendant–Appellee.**

No. 96–4185.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1997.

Decided Aug. 26, 1997.

Del F. Phillips (argued), Broas & Schneider, St. Louis, MO, for Plaintiff–Appellant.

Alan J. Martin (argued), Christopher D. Landgraff, Mayer, Brown & Platt, Chicago, IL, for Defendant–Appellee.

Rita M. Novak, Office of the Attorney General, Chicago, IL, for Amicus Curiae James E. Ryan.

Before CUMMINGS, RIPPLE and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff-appellant Lillie Vinson, a Missouri resident, commenced this diversity action against defendant-appellee Casino Queen, Inc. ("Casino Queen") under 720 Ill. Comp.

Stat. Ann. 5/28–1 *et seq.* (West 1997) (the "Loss Recovery Act") to recover losses in the amount of $77,200 allegedly incurred by her son, Elgin Vinson, aboard Casino Queen's riverboat casino in St. Clair County, Illinois.

Vinson brought this action against Casino Queen under Section 5/28–8 of the Loss Recovery Act, which provides that:

(a) Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value....

(b) If within 6 months, such person who under the terms of Subsection 28–8(a) ... is entitled to initiate action to recover his losses does not in fact pursue his remedy, any person may initiate a civil action against the winner. The court or the jury ... shall determine the amount of the loss. After such determination, the court shall enter a judgment of triple the amount so desired.[1]

The term "gambling" is defined in Section 5/28–1 of the Act. Subsection (b) of that Section provides that "Participants in any of the following activities shall not be convicted of gambling therefor: ... (11) Gambling games conducted on riverboats when authorized by the Riverboat Gambling Act."

The Illinois Riverboat Gambling Act, 230 Ill. Comp. Stat. Ann. 10/1 *et seq.*, authorized riverboat gambling operations in the state and provided for the formation of the Illinois Gaming Board to oversee operations licensed under that Act. Vinson emphasizes that under the Riverboat Gambling Act riverboat gambling operations are "authorized to the extent that they are carried out in accordance with the provisions of this Act." 230 Ill. Comp. Stat. Ann. 10/3(a). In this case, she argues, the gambling at issue was not carried out according to the provisions of the Riverboat Gambling Act in that Elgin Vinson was under 21 years old when the gambling in question took place,[2] in violation of 230 Ill. Comp. Stat. Ann. 10/11(a)(10). Vinson claims that as a result the gambling at issue here was not authorized by the Riverboat Gambling Act within the meaning of Section 28–1(b)(11) of the Loss Recovery Act, and consequently the gambling losses created by this unauthorized gambling are fully recoverable under the Loss Recovery Act.

Both parties filed motions for summary judgment in the district court. Casino Queen argued that every game that took place aboard its riverboat casino was authorized and governed by the Riverboat Gambling Act and therefore exempted from the coverage of the Loss Recovery Act. It also asserted that recovery under the Loss Recovery Act would reward Elgin Vinson for obtaining a false identification card[3] and gambling with money that was obtained by extortion.[4] However, the district court was not required to look at the particulars of the Vinsons' activities, because it found that Vinson could not state a cause of action under the Loss Recovery Act. It found that:

[A]ll games conducted on the Casino Queen were games 'authorized by the Riverboat Gambling Act,' and therefore are specifically exempted from recovery under the very statute upon which plaintiff relies. This is true, despite the fact that the admission of a minor may have violated the Act. The gambling games themselves fall within in [sic] the Act, and are therefore 'authorized' by the Act.

*Vinson v. Casino Queen Inc.*, Memorandum & Order of the District Court at 3 (S.D.Ill. Nov. 14, 1996). The district court ruled that the Loss Recovery Act was "simply inappli-

---

1. Elgin Vinson did not sue to recover his losses under Subsection (a) of the statute. Lillie Vinson, after waiting the six months set forth in Subsection (b), brought this action to recover the alleged losses and treble damages.

2. Elgin Vinson boarded Casino Queen's riverboat casino using a state-issued Missouri identification card that was falsified and illegally obtained after Elgin showed Missouri officials the birth certificate and social security card of a friend.

3. Vinson admits in her Reply Brief that the identification was "phony" (Br. at 8).

4. Casino Queen also claims that Mrs. Vinson was aware of Elgin's activities and held and dispensed the extorted money on an as-needed basis to support Elgin's gambling activities. Def. Br. at 3.

cable" to a violation (*i.e.*, the admission of a minor into the casino) of the Riverboat Gambling Act. *Id.* at 4. It reviewed the power and purpose of the Illinois Gaming Board established under the Riverboat Gambling Act and concluded that Vinson's remedy, if any, would be found before the Board. *Id.*

This Court reviews *de novo* the district court's dismissal for failure to state a claim, "accepting all the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of [Vinson]." See *Wahlin v. Sears, Roebuck & Co.*, 78 F.3d 1232, 1234 (7th Cir.1996).

■ Judge Stiehl properly found that Vinson cannot state a cause of action under the Loss Recovery Act because her son's alleged losses were incurred playing gambling games that were exempt under that Act. The Loss Recovery Act specifically exempts *"gambling games* conducted on riverboats when authorized by the Riverboat Gambling Act." 720 Ill. Comp. Stat. Ann. 5/28–1(b)(11) (emphasis added). In order to avoid the result being advocated in this litigation, the Illinois legislature tied the exemption to the "gambling games" themselves rather than to whether the specific persons or wagers at issue ran afoul of the Riverboat Gambling Act. Illinois case law supports this conclusion. See *Cie v. Comdata Network, Inc.*, 275 Ill.App.3d 759, 211 Ill.Dec. 931, 934, 656 N.E.2d 123, 127 (1995), appeal denied, 165 Ill.2d 548, 214 Ill. Dec. 857, 662 N.E.2d 423 (1996) ("[I]t is clear that the types of gambling listed in subsection 28–1(b) [of the Loss Recovery Act] are expressly excepted from the definition of gambling.") (emphasis added); *Moushon v. AAA Amusement, Inc.*, 267 Ill.App.3d 187, 204 Ill.Dec. 582, 584–585, 641 N.E.2d 1201, 1203–1204 (1994), appeal denied, 161 Ill.2d 529, 208 Ill.Dec. 362, 649 N.E.2d 418.

The fact that Elgin Vinson improperly participated in a game of twenty-one (a game specifically authorized by the Gaming Board under the Riverboat Gambling Act) does not void the game's exemption from the Loss Recovery Statute. Vinson has failed to distinguish between the general authorization for "gambling games," from which the exemption to the Loss Recovery Act arises, and the regulatory framework vesting enforcement powers under the Riverboat Gambling Act in the Gaming Board. We agree with the district court that where there are deviations from the rules set forth in the Riverboat Gambling Act, that Act empowers the Gaming Board with full authority to deal with and punish such infractions, including by fine or by suspension or revocation of licenses. See 230 Ill. Comp. Stat. Ann. 10/5.[5]

■ While we are mindful that Section 3(a) of the Riverboat Gambling Act provides that riverboat gambling *operations* are authorized only to the extent that they are carried out in accordance with the provisions of the Act, it is less than obvious that the "gambling operations" discussed in that section refer to the same thing as the "gambling games" exempted under the Loss Recovery Act. More critically, the Loss Recovery Act should not be interpreted to yield an unjust or absurd result contrary to its purpose. See *Schirmer v. Bear*, 174 Ill.2d 63, 220 Ill.Dec. 159, 163–164, 672 N.E.2d 1171, 1175–1176 (1996); *Mulligan v. Joliet Regional Port Dist.*, 123 Ill.2d 303, 123 Ill.Dec. 489, 495, 527 N.E.2d 1264, 1269 (1988). "It is a canon of statutory construction that where the passage of a series of legislative acts results in confusion and consequence which the legislature may not have contemplated, courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit practical application of the statutes." *People ex rel. Community High School Dist. No. 231 v. Hupe*, 2 Ill.2d 434, 118 N.E.2d 328, 334–335 (1954). The Loss Recovery Act was intended to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism. As Casino Queen points out, if this Court allowed Vinson to recover in this case under the Loss Recovery Act against a licensed riverboat for gambling that takes place after a minor has presented fraudulent identification, then would we not also have to allow (with the possibility of treble damages) other plaintiffs

---

5. This Court takes judicial notice of the fact that the Gaming Board has in fact imposed several substantial fines against riverboat casino operators because of underage gambling on their riverboats.

**658**

to bring an action against the State of Illinois for every losing lottery ticket that was successfully, but illegally, purchased by persons under the age of 18 (Br. at 7)? Counsel for Vinson answered that question affirmatively in oral arguments before us. Moreover, if the Loss Recovery Act could be interpreted to create a cause of action in this type of case, it would signal to potential plaintiffs that it is profitable to encourage minors to forge identification cards or otherwise participate in gambling games they are not permitted to play—or more broadly, to encourage riverboat patrons to make other types of illegal wagers. The consequence would be only that the potential plaintiff becomes vested with a right to sue for treble damages if it loses its wager. That is an absurd result, which cannot be countenanced.

For the reasons discussed above, the decision of the district court is AFFIRMED.