(No. 79097.—)

TIMOTHY J. SCHIRMER, Appellee, v. WILLIAM F. BEAR *et al.*, Appellants.

*Opinion filed October 18, 1996.*

HARRISON, J., specially concurring.

John S. Lowry, Vanessa S. Porter and Alfred W. Cowan, of Brassfield, Cowan & Howard, of Rockford, for appellants.

Schirger & Monteleone, of Rockford (William E. Schirger and David F. Monteleone, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

The question presented in this appeal is whether, under section 12.55 of the Illinois Business Corporations Act of 1983 (the Act) (805 ILCS 5/12.55 (West 1992)), a plaintiff shareholder in a close corporation must prove grounds which would justify dissolving the corporation as a prerequisite to receiving the statutory remedy of having the corporation purchase his or her shares. The appellate court concluded that a plaintiff does not have to establish that dissolution is justified before a corporation may be forced to buy a complaining shareholder's corporate stock. 271 Ill. App. 3d 778. We allowed defendants' petition for leave to appeal. 155 Ill. 2d R. 315. For the reasons which follow, we affirm the judgment of the appellate court.

### Background

Defendant William R. Bear Agency, Inc. (the Agency), is an independent insurance agency located in Freeport, Illinois. The Agency was incorporated in 1979, at which time 1,000 shares of common stock were issued. Of these 1,000 shares, 750 were retained by Mr. William R. Bear, previously the Agency's sole owner, and his wife, Mrs. Jean M. Bear. The remaining 250 shares were purchased by Mr. and Mrs. Bear's son, defendant William F. Bear (William), who was also an employee of the Agency.

On May 1, 1982, the plaintiff, Timothy Schirmer, began working for the Agency as an insurance broker. On that same date, two stock purchase agreements were entered into. In the first, Mr. and Mrs. Bear agreed to sell William 44 of their shares in the Agency and to sell plaintiff 187 of their shares. In return for the 187 shares, plaintiff made a $10,000 down payment and agreed to pay the remaining balance of $66,670 in monthly installments at an interest rate of 9.25% per annum. Plaintiff's

total obligation for the shares, including principal and interest, was approximately $106,000. Also, under the first agreement, plaintiff received an option to buy 53 additional shares of the Agency at $410 per share, with further conditions of the sale to be decided at the time of purchase.

Under the terms of the second stock purchase agreement, the Agency bought back all of Mr. and Mrs. Bear's remaining 519 shares for $212,790. This amount was to be paid in monthly installments of $3,450.65, which reflected a 9.25% annual interest rate. The Agency's total obligation for the shares was approximately $290,000. William and plaintiff guaranteed payment for the 519 shares both individually and jointly. Because of the two stock purchase agreements, as of May 1, 1982, plaintiff and William became the sole shareholders of the Agency. William owned 294 shares, representing 61.1% of the outstanding stock, and plaintiff owned 187 shares, representing 38.9%.

From May 1, 1982, until July 1990, plaintiff had a good working relationship with William. During this time, plaintiff earned an annual income from the Agency, plus annual bonuses for increasing revenues by developing new accounts. The gross annual commissions of the Agency, with plaintiff's help, increased from $180,653 to $285,000. In addition, during this period, plaintiff served as a corporate director of the Agency. William and defendant Lawrence Peck, a retired accountant and friend of Mr. Bear, also served as corporate directors.

The final installment payments under both of the 1982 stock purchase agreements were due at the beginning of July 1990. At a meeting held on July 2, 1990, William and plaintiff presented the final payments to Mr. and Mrs. Bear and, in return, received their stock certificates. At the same meeting, William and plaintiff,

acting in their capacity as shareholders, elected the board of directors for the Agency. As in the past, this board consisted of William, plaintiff, and Lawrence Peck. The directors' term of office was to be for one year. Also during the same meeting, William and plaintiff agreed to extend the terms of the first stock purchase agreement until such time as a new agreement between William and plaintiff could be completed. In addition, the value of the corporation, later contested at trial, was declared to be $500,000.

On July 18, 1990, plaintiff wrote to William expressing a desire to exercise his option to purchase 53 additional shares of the Agency pursuant to the terms of the first stock purchase agreement. Plaintiff enclosed a proposed payment plan with his letter which stated that payment amounts and payment dates were to be left to the discretion of the buyer. Two days later, on July 20, 1990, William met with plaintiff and rejected the offer. At the same time, William informed plaintiff that, for business reasons, he had closed the books of the Agency, thereby forgoing any bonuses or profit sharing for the year.

On August 10, 1990, plaintiff wrote William a letter in which he strongly protested William's decision to close the books of the Agency and declared that doing so was not in the best interest of the stockholders. Plaintiff further alleged that William had wasted corporate assets. Plaintiff stated that he could not see himself continuing with the Agency under current conditions and requested that the Agency pay him $195,000 for his shares. This figure was based on his percentage interest in the Agency and the $500,000 valuation established at the July 2, 1990, meeting. Plaintiff also stated that once his shares were purchased, he would be willing to either terminate his relationship with the Agency or continue on as an employee with an annual salary equal to Wil-

liam's. The next day, August 11, 1990, William wrote plaintiff a letter in which he rejected plaintiff's proposals and advised plaintiff to have his attorney contact William's attorney, John B. Whiton.

On August 20, 1990, William sent plaintiff a letter notifying him of an annual directors' meeting to be held on August 30, 1990. The letter did not contain any notice of intent to hold a shareholders' meeting, to amend the bylaws, or to reduce the size of the board of directors.

On August 27, 1990, Whiton, who also served as counsel for the Agency, wrote to plaintiff, stating that plaintiff's letter of August 10 was deemed a resignation effective no later than September 15, 1990. Whiton also rejected plaintiff's asking price for his stock and instead offered the price of $76,670. This figure was derived from the first stock purchase agreement, which permitted Mr. and Mrs. Bear to reacquire plaintiff's shares for the principal price he paid if plaintiff resigned from the Agency or was discharged for his conduct. Whiton's letter also noted that if plaintiff refused to sell his stock, he faced the possibility of remaining, for quite some time, a minority shareholder with no input into how the Agency was run.

On August 30, 1990, at a meeting of the board of directors at which plaintiff was present, William moved to amend the Agency's bylaws to reduce the number of directors from three to one. William voted his 61.1% of the Agency's shares in favor of the motion and plaintiff voted his 38.9% against. The motion passed. William then nominated himself as sole director of the Agency and was elected, again on the strength of his ownership of 61.1% of the Agency's shares. As sole director, William appointed himself president and treasurer of the Agency, and appointed his wife secretary. William also removed plaintiff's name from all corporate accounts

and set plaintiff's termination date for September 15, 1990. After that date, plaintiff received no further income, bonuses, or other benefits from the Agency.

On December 7, 1990, plaintiff filed the instant lawsuit in the circuit court of Stephenson County, alleging that the defendants wasted corporate assets and acted in an illegal, oppressive, or fraudulent manner. No allegations were made regarding corporate deadlock. At trial, plaintiff argued that he had been exploited by William. Plaintiff maintained that William had used him to finance the stock purchase agreements and then, once the payments required under the agreements were completed, illegally removed him from the Agency. Plaintiff prayed for dissolution of the corporation or, in the alternative, an order directing the Agency to buy plaintiff's shares.

After trial, the court concluded that plaintiff's removal as corporate director and officer at the August 30, 1990, meeting was "obviously illegal, but the record is devoid of any evidence that plaintiff was harmed thereby." The court noted that the decision to dissolve a corporation is discretionary, even when a finding of illegal conduct has been made. 805 ILCS 5/12.50 (West 1992) ("A Circuit Court *may* dissolve a corporation: ***" (emphasis added)). The court declined to exercise its discretion, concluding that plaintiff had failed to prove that defendants engaged in conduct which justified dissolving the Agency. However, the court held that plaintiff could recover the fair value of his shares pursuant to section 12.55 (805 ILCS 5/12.55 (West 1992)). The court then ordered a hearing to be held to assess the value of plaintiff's stock. Subsequently, upon defendant's motion to reconsider, the court reversed itself, based solely upon the first district of the appellate court's ruling in *Coduti v. Hellwig*, 127 Ill. App. 3d 279 (1st Dist. 1984). The *Coduti* court held that the Act's alternative

remedy of a purchase of plaintiff's shares could not be awarded unless the plaintiff proved all of the elements necessary to warrant dissolving the corporation. *Coduti,* 127 Ill. App. 3d at 294.

On appeal, the second district of the appellate court essentially agreed with the circuit court's original ruling and findings. The appellate court acknowledged, but declined to follow, the interpretation of section 12.55 that was adopted in *Coduti.* Instead, the appellate court held that a plaintiff does not have to establish that dissolution is justified before the alternative remedy of a forced purchase of shares may be granted under section 12.55. The appellate court reversed the circuit court's decision refusing to order the Agency to purchase plaintiff's shares and remanded the cause for a hearing to determine the fair value of plaintiff's shares. This appeal followed.

## Analysis

The provision at issue in this appeal, section 12.55 of the Act,[1] provides in pertinent part:

"(a) In either an action for dissolution pursuant to Section 12.50 or in an action which alleges the grounds for dissolution set forth in Section 12.50 but which does not seek dissolution, the Circuit Court, in lieu of dismissing the action or ordering dissolution, may retain jurisdiction and:

---

[1]During the pendency of this appeal, section 12.55 was substantially revised. Section 12.55 now pertains exclusively to shareholder remedies for public corporations. See 805 ILCS 5/12.55 (West Supp. 1995). An additional section, 12.56, has been enacted to govern shareholder remedies for nonpublic corporations. See 805 ILCS 5/12.56 (West Supp. 1995). Neither plaintiff nor defendants cited to these new sections or argued that they were relevant to the disposition of this appeal. Accordingly, we do not address the question of whether these statutory changes have any application to the instant case. See *Varelis v. Northwestern Memorial Hospital,* 167 Ill. 2d 449, 461-62 (1995); *First of America Trust Co. v. Armstead,* 171 Ill. 2d 282, 289-90 (1996).

* * *

(3) In an action by a shareholder, order a purchase of the complaining shareholder's shares as provided in subsections (f) and (g) below.

* * *

(f) The court, at any time during the pendency of the action and upon the motion of the complaining shareholder, may order the corporation to purchase the shares of the complaining shareholder at a fair price determined by the court ***.

(g) Either the corporation or any shareholder or group of shareholders may, any time after filing of an action for dissolution pursuant to subsection (b) of Section 12.50, petition the court to purchase the shares of a complaining shareholder ***." 805 ILCS 5/12.55 (West 1992).

Section 12.50 of the Act provides in pertinent part:

"§ 12.50. Grounds for judicial dissolution. A Circuit Court may dissolve a corporation:
***

(b) In an action by a shareholder, if it is established that:
***

(2) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive or fraudulent; or

(3) The corporate assets are being misapplied or wasted." 805 ILCS 5/12.50(b) (West 1992).

Plaintiff argues that section 12.55 does not require, as a condition precedent to relief, proof of conduct which would entitle him to corporate dissolution under section 12.50. Plaintiff notes that by its express terms, section 12.55 permits alternative remedies not only in actions brought solely under section 12.50, but also in actions "which allege[ ] the grounds for dissolution set forth in Section 12.50 but which [do] not seek dissolution." 805 ILCS 5/12.55(a) (West 1992). In addition, plaintiff notes that the circuit court is given the discretion to order alternative remedies "in lieu of dismissing the action or ordering dissolution" (805 ILCS 5/12.55(a) (West 1992))

and, further, that under subsection (f) the court may order a forced purchase of shares "at any time during the pendency of the action" (805 ILCS 5/12.55(f) (West 1992)). Based on this language, plaintiff maintains that the filing of "an action which alleges the grounds for dissolution set forth in Section 12.50" (805 ILCS 5/12.55(a) (West 1992)) is essentially a threshold requirement for obtaining the alternative remedies available under section 12.55. Once this requirement is met, the court need only be apprised of the relevant facts. Thereafter, if equity requires the awarding of an alternative remedy, the court is permitted to grant one. Continuing, plaintiff argues that because he filed an action which alleged grounds for dissolution under section 12.50, *i.e.*, waste, illegality and oppression, and because the equities were in his favor, the trial judge properly acted within his discretion when he initially awarded the buyout of plaintiff's shares.

In contrast, defendants argue that the only way to effectuate fair and uniform results under section 12.55 is to require a plaintiff to prove all of the elements necessary to justify dissolving the corporation under section 12.50. Defendants point out that the decision to grant dissolution under section 12.50 remains discretionary even when it has been established that the defendants engaged in illegal or oppressive acts, or wasted corporate assets. 805 ILCS 5/12.50 (West 1992) ("A Circuit Court may dissolve a corporation: ***"). Thus, defendants maintain that in order to prove all the elements for dissolution in this case, plaintiff must establish both that defendants engaged in the alleged misconduct and that the conduct was severe enough to warrant judicial dissolution. Because the trial court concluded that dissolution was not warranted in the case at bar, despite the finding of illegal conduct, defendants argue that the alternative remedy of a buyout of plaintiff's shares should not be available.

Defendants also note that plaintiff's construction of section 12.55 does not provide an explicitly defined basis for awarding relief. Defendants express concern that if this court approves plaintiff's analysis of the statute, trial courts will have "unfettered discretion to order the corporation to purchase the minority shareholder's shares." Defendants urge this court to follow the interpretation of section 12.55 adopted by the *Coduti* court, which held that the provision "contemplates only an alternative remedy, rather than a distinct action. Consequently, the right to that remedy depends upon proof of *all of the elements* which would have entitled the party to a judicial dissolution \*\*\*." (Emphasis added.) *Coduti*, 127 Ill. App. 3d at 294.

We agree with plaintiff that the plain language of section 12.55 provides a basis for relief independent of proof of grounds for dissolution under section 12.50. The statute contemplates broad discretion in the trial court in deciding to award a forced purchase of shares, and unambiguously "provides for a separate and distinct cause of action from Section 12.50." *Kimmel v. Wirtz*, 793 F. Supp. 818, 820 (N.D. Ill. 1992). Therefore, plaintiff's failure to prove grounds entitling him to judicial dissolution does not foreclose the availability of the alternative remedy of a forced purchase of his shares.

However, we disagree with the remainder of plaintiff's interpretation of section 12.55. Plaintiff's contention is that section 12.55 gives the circuit courts the discretionary authority to order the alternative remedy of a forced purchase of shares without first making any findings of corporate waste, illegality or other clearly specified wrongdoing. Defendants correctly point out that plaintiff's interpretation of section 12.55 leaves the elements of proof required under the statute completely undefined. Thus, under plaintiff's interpretation, the

circuit courts would be left with no guidelines for determining what type of behavior warrants awarding the forced purchase of shares, and reviewing courts would have no way of determining when, if ever, a circuit court had abused its discretion in awarding that remedy. Similarly, under plaintiff's analysis of the statute, defendant corporations would have no notice respecting what actions taken by the corporation would justify ordering the forced purchase of a shareholder's stock. We presume that in enacting section 12.55, the legislature did not intend to produce an absurd, inconvenient or unjust result. *Baker v. Miller*, 159 Ill. 2d 249, 262 (1994). Accordingly, because plaintiff's proposed construction of section 12.55 poses unavoidable problems of application and raises substantial questions of fundamental fairness, that construction must be rejected.

We must also, however, reject defendants' explanation of what proof is required under section 12.55. Defendants argue that all of the elements which would entitle a plaintiff to judicial dissolution must be proved in order for an alternative remedy under section 12.55 to be available. In other words, defendants argue, a plaintiff must establish both that the defendants engaged in the alleged misconduct and that the misconduct was so wrongful as to justify dissolving the corporation. This interpretation of section 12.55 would provide clarity and guidance for the courts, but it is also illogical: plaintiffs would be required to prove that a defendant's conduct was sufficiently egregious to warrant judicial dissolution in order to receive the far less drastic remedy of a buyout. See 8 C. Murdock, Illinois Practice § 18.21 (1996); C. Murdock, *The Evolution of Effective Remedies for Minority Shareholders and Its Impact Upon Valuation of Minority Shares*, 65 Notre Dame L. Rev. 425, 427 (1990).

Moreover, defendants' interpretation of section 12.55 is contrary to the legislative intent behind that provision. Judicial dissolution is an extreme remedy which courts are properly reluctant to order. See *Coduti*, 127 Ill. App. 3d at 283; *Central Standard Life Insurance Co. v. Davis*, 10 Ill. 2d 566, 576 (1957). Prior to the enactment of section 12.55, minority shareholders seeking redress were left without a remedy in those instances where the defendant's conduct, even though wrongful, did not justify dissolving the corporation. Section 12.55 was specifically enacted to correct this problem by increasing the remedies available to minority shareholders and by enlarging the discretionary authority of the circuit courts to award relief in situations which do not warrant dissolution but which do warrant some other, less severe remedy. See, *e.g.*, Official Comments of the Advisory Committee to the Secretary of State on the Illinois Business Corporation Act of 1983, Section 12.55 *reprinted in* 2 Corporation Law Committee, Chicago Bar Association, The Illinois Business Corporation Act Annotated 429 (3d ed. Supp. 1984) ("The Advisory Committee perceived a need for [alternative] remedies less Draconian than dissolution, whenever anyone sought dissolution of a corporation"); 8 C. Murdock, Illinois Practice § 18.21 (1996). Requiring plaintiffs to prove not only that the defendants engaged in misconduct but also that the misconduct was so extreme as to justify dissolution of the corporation defeats this legislative intent by severely curtailing the discretion invested in the circuit courts to order the alternative remedies. Therefore, we decline to adopt defendants' proposed construction of section 12.55.

We hold that when a plaintiff seeks relief under section 12.55 by filing an action which alleges illegal, oppressive or fraudulent conduct (805 ILCS 5/12.50(b)(2) (West 1992)), or the misapplication or wasting of corporate assets (805 ILCS 5/12.50(b)(3) (West 1992)), the plaintiff

must establish that the defendant engaged in the alleged statutory misconduct. However, the plaintiff need *not* prove that defendant's wrongdoing was so severe that it would justify dissolving the corporation. Once the predicate misconduct is established, the court may, in its discretion, determine which, if any, remedy is equitable and appropriate for plaintiff under the statute. We believe this construction of section 12.55 fully effectuates the legislative intent to increase shareholder remedies while, at the same time, providing adequate guidance for the courts. We further note that this construction comports with the current statutory scheme regulating shareholder remedies for nonpublic corporations. See 805 ILCS 5/12.56 (West Supp. 1995).

In the instant case, the trial judge found that the removal of plaintiff as a corporate officer and director at the August 30, 1990, meeting was "obviously illegal" and specifically noted that the notice for the meeting "failed to comply with the law." In addition, while the trial judge did not further identify defendants' illegal acts, the record supports plaintiff's contentions that the removal of plaintiff was done in violation of section 10.20 of the Act, which requires "the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote" to amend the bylaws (see 805 ILCS 5/10.20(c) (West 1992)), and section 8.10, which prohibits the shortening of an incumbent director's term of office (see 805 ILCS 5/8.10(d) (West 1992)). Here, William was able to amend the Agency's bylaws with only 61.1% of the shares, and plaintiff's one-year term as corporate director was ended less than two months after it began.

Defendants do not contest the trial judge's finding of illegality but instead emphasize the judge's additional statement that plaintiff was not damaged by his illegal removal as corporate director and officer. Defendants conclude that even under the construction of section

12.55 adopted herein, and even with the finding of illegality by the trial judge, the buyout should not have been ordered because the plaintiff suffered no injury.

It is unclear from the record exactly what the trial judge meant by his statement that the plaintiff was not damaged by the events at the August 30, 1990, meeting. The statement was made in the context of concluding that plaintiff was not entitled to dissolution of the corporation under section 12.50. Thus, the statement may simply have meant that plaintiff had not been sufficiently damaged to warrant the drastic remedy of dissolution. Clearly, the trial judge did not believe that plaintiff was not damaged at all; otherwise he would not have ordered the buyout. Indeed, the judge expressly noted during comments made at the conclusion of trial that any award which he entered would "reflect what, if any, injury [had been] inflicted."

Regardless of the precise meaning of the statement, the facts indicate that plaintiff was forced out of any participation in the Agency by the actions of an illegally elected sole director. The parties agree that the decision to order remedies under section 12.55 is left to the sound discretion of the trial judge. We conclude, based on the record before us, that the trial judge did not exceed the scope of his discretionary authority when he initially ordered the Agency to purchase plaintiff's shares. The judge's subsequent reversal of that decision was based solely on the *Coduti* court's interpretation of section 12.55, which today has been overruled. Therefore, the trial judge's ultimate decision not to order the Agency to purchase plaintiff's shares must be reversed.

For the foregoing reasons, the appellate court's judgment reinstating the trial court's initial order and remanding the cause for a hearing to determine the fair value of plaintiff's shares is affirmed.

*Affirmed.*

JUSTICE HARRISON, specially concurring:

I agree with the result reached by the majority, but write separately because I disagree with my colleagues' construction of section 12.55 of the Illinois Business Corporation Act of 1983 (805 ILCS 5/12.55 (West 1992)).

Under the plain language of section 12.55, the court may order the corporation to purchase the shares of a complaining shareholder at any time during the pendency of a dissolution action if the complaining shareholder has moved for such relief. As the appellate court correctly held, the statute does not require grounds for dissolution to be proven before this alternative remedy may be applied. 271 Ill. App. 3d at 787. The remedy is available whenever the appropriate allegations have been made to state a claim under section 12.50 of the Act (805 ILCS 5/12.50 (West 1992)) and the shareholder asks to be bought out, as was the case here. There is no basis in the law for requiring a petitioning shareholder to do anything more.