(No. 86974)

*In re* MARRIAGE OF BURGESS (Donald J. Burgess,·
Appellant, v. Sharron M. Burgess, Appellee).

*Opinion filed February 17, 2000.*

A. Marcy Newman and Susan Lorraine Kennedy, both
of Chicago, for appellant.

Shannon M. Cobe and Phillip J. Mohr, both of
Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the
court:

The issue presented in this case is whether the ple-
nary guardian of a disabled adult has standing to proceed

with a dissolution of marriage action filed by the ward prior to the adjudication of the ward's disability. We hold that a plenary guardian may continue a dissolution action on behalf of a ward in these circumstances.

## BACKGROUND

The relevant facts in this case are undisputed. Donald Burgess and Sharron Burgess were married in 1978. In April 1996, Donald filed a petition for dissolution of their marriage. In addition, he filed a petition for an emergency order of protection against Sharron, which the circuit court granted.

In May 1997, Donald's sister, Virginia Cronk (Cronk), filed a petition for appointment of guardian for a disabled person, in which she alleged that Donald was incapable of making or communicating decisions regarding the care of his person and that he was unable to manage his financial affairs. Cronk requested that the circuit court adjudge Donald a disabled person and that she be appointed guardian of his person and estate. In June 1997, the circuit court appointed Cronk guardian of Donald's person and estate.

In July 1997, Sharron filed a motion to dismiss Donald's dissolution action on the ground that Cronk had no standing to continue this action on behalf of Donald. The circuit court denied her motion but, pursuant to Sharron's request, certified the following question for review by the appellate court under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)): "Can a disabled adult's plenary guardian (a guardian of both the individual's estate and person) continue a dissolution of marriage action originally filed by the disabled adult prior to the filing of a petition for guardianship and prior to a finding of disability?" 302 Ill. App. 3d 807, 808.

The appellate court answered the certified question in the negative. 302 Ill. App. 3d at 812. The appellate court found that its holding was mandated by this court's

decision in *In re Marriage of Drews*, 115 Ill. 2d 201 (1986). According to the appellate court, *Drews* held that, absent a specific statute authorizing a guardian to initiate or maintain a dissolution of marriage proceeding for a ward, a guardian is without standing to do so. The appellate court found no such statutory authority and, therefore, concluded that Cronk was without standing to prosecute Donald's dissolution action. We granted Donald's petition for leave to appeal. 177 Ill. 2d R. 315.

ANALYSIS

Section 11a—18 of the Probate Act of 1975 (755 ILCS 5/11a—18 (West 1996)) sets forth the powers of a guardian of the estate. The powers of a guardian of the person are contained in section 11a—17 of the Probate Act (755 ILCS 5/11a—17 (West 1996)), which describes the guardian's authority to make personal decisions on behalf of a ward as follows:

> "To the extent ordered by the court and under the direction of the court, the guardian of the person shall have custody of the ward and the ward's minor and adult dependent children; shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance, and professional services as are appropriate ***. The guardian shall assist the ward in the development of maximum self-reliance and independence." 755 ILCS 5/11a—17(a) (West 1996).

Donald argues that the appellate court erred in holding that a guardian has no standing to continue a ward's action for dissolution of marriage because the authority to do so is implicit in the language of section 11a—17. Sharron responds that, under this court's decision in *Drews*, a guardian may not initiate or continue a ward's dissolution proceeding unless that power is specifically enumerated in a statute. Sharron asserts that, because neither section 11a—17 nor any other statute expressly authorizes a guardian to continue a dissolution action previously filed by a ward, the appellate court was cor-

rect in denying Cronk standing to pursue Donald's dissolution action.

Therefore, our initial inquiry in this case is whether an express grant of statutory authority is necessary for a guardian to continue a ward's dissolution action. In other cases involving guardians' authority to make personal decisions on behalf of a ward, Illinois courts have held that the guardians may make such decisions under section 11a—17 even though the power to do so is not specifically enunciated. For example, courts have held that guardians may decide on behalf of a ward to withdraw artificial nutrition and hydration (see *In re Estate of Longeway*, 133 Ill. 2d 33, 45-46 (1989); *In re Estate of Greenspan*, 137 Ill. 2d 1, 16 (1990)), may consent to an adult ward's adoption (*In re Adoption of Savory*, 102 Ill. App. 3d 276, 277-78 (1981)), and may consent to an abortion on behalf of a disabled ward (*In re Estate of D.W.*, 134 Ill. App. 3d 788, 791 (1985)).

In *Drews*, however, this court decided that, with respect to the decision to initiate dissolution of marriage proceedings, a guardian must have specific statutory authority. The ward's mother in *Drews* was named guardian of her son's person and estate after her son became disabled as the result of a severe head injury. Following her appointment as guardian, the mother filed a dissolution of marriage action on her son's behalf. The son's wife filed a motion to dismiss the action on the basis that the mother did not have standing to bring the action. *Drews*, 115 Ill. 2d at 202-03.

In determining whether the mother had standing to initiate a proceeding for dissolution of her son's marriage, the *Drews* court examined case law from other jurisdictions. The court found that a majority of jurisdictions which had considered the issue had held that, "absent statutory authorization, a guardian cannot maintain an action, on behalf of a ward, for the dissolu-

tion of a ward's marriage." *Drews*, 115 Ill. 2d at 203. This court observed that, in previous cases involving different issues, it had recited this majority rule with approval. *Drews*, 115 Ill. 2d at 204, citing *Pyott v. Pyott*, 191 Ill. 280, 288 (1901) (guardian seeking annulment of a ward's marriage); *Iago v. Iago*, 168 Ill. 339, 341-42 (1897) (guardian defending dissolution of marriage proceedings). The court concluded that Illinois follows the majority rule that, "absent statutory authorization, a guardian cannot institute an action, on behalf of a ward, for the dissolution of the ward's marriage." *Drews*, 115 Ill. 2d at 205.

The *Drews* court then examined sections 11a—17 and 11a—18 of the Probate Act to determine whether there is statutory authority for a guardian to bring a dissolution action. The court found no such authority in section 11a—18 of the Probate Act because this provision grants guardians standing to represent a ward only with respect to legal proceedings concerning the ward's estate. Likewise, there is nothing in section 11a—17 that "grants the guardian standing to maintain or defend *any* legal proceeding." (Emphasis in original.) *Drews*, 115 Ill. 2d at 206. This court then concluded in *Drews* that, given the absence of statutory authority, the mother lacked standing to "maintain an action for the dissolution of her ward's marriage." *Drews*, 115 Ill. 2d at 207.

Although the issue in the instant case may be similar to that in *Drews*, we find that the strict rule adopted in *Drews*, requiring express statutory authority for a guardian to act, should not be applied in this case. Donald correctly argues that *Drews* is factually distinguishable from his case. In addition, the policy reasons underlying the *Drews* holding do not support mandating specific statutory authority for a guardian to continue a dissolution proceeding, rather than initiate a dissolution proceeding on behalf of a ward.

The issue presented in the case currently before us was not decided in *Drews*. Whereas *Drews* involved a guardian's power to *initiate* dissolution of marriage proceedings on behalf of a ward, Donald's case concerns a guardian's authority to *continue* a ward's dissolution of marriage action. Based on references in *Drews* to "maintaining" a dissolution action, Sharron and the appellate court interpret *Drews* as holding that a guardian may not institute *or continue* a dissolution action without express statutory authority. To "maintain" a legal action may mean either "to commence" or "to continue" the action. See Black's Law Dictionary 953 (6th ed. 1990); *Amman Food & Liquor, Inc. v. Heritage Insurance Co.*, 65 Ill. App. 3d 140, 146 (1978). In *Drews*, this court used the words "initiate" and "maintain" interchangeably. In the factual context of *Drews*, however, it is clear that the holding in that case is limited to a guardian's authority to commence a dissolution action on behalf of a ward.

The factual differences between *Drews* and the instant case are important because the policy reasons underlying the *Drews* holding are particular to the facts in that case and are inapposite in the circumstances presented by the instant case. In *Drews*, this court adopted the strict rule, followed by a majority of jurisdictions, that express statutory authority is necessary for a guardian to initiate dissolution proceedings on behalf of a ward. Although the rationale for this rule is not discussed in *Drews*, it is explained by other courts deciding cases involving this rule. According to these courts, the need for express statutory authority is based on policy reasons. These policy reasons are primarily premised on the personal nature of the decision to terminate a marriage (see, *e.g.*, *In re Jennings*, 187 N.J. Super. 55, 59, 453 A.2d 572, 574 (1981); *Mohrman v. Kob*, 291 N.Y. 181, 188, 51 N.E.2d 921, 924 (1943)) and the inability to determine with certainty that the ward would have wanted to end

the marriage (see *Jennings*, 187 N.J. Super. at 59, 453 A.2d at 574; *Boyd v. Edwards*, 4 Ohio App. 3d 142, 146, 446 N.E.2d 1151, 1156 (1982)). In *In re Marriage of Drews*, 139 Ill. App. 3d 763, 775-76 (1985), the court noted the absence of any facts indicating that the ward would have wanted to seek a dissolution of his marriage. As one court observed, "majority jurisdictions choose an absolute bar as the lesser of two evils, protecting the possibility that the incompetent spouse might elect to remain married if competent, even if it effectively prevents the incompetent spouse from ending the marriage while under the adjudication of incompetency." *Nelson v. Nelson*, 118 N.M. 117, 120, 878 P.2d 335, 338 (App. 1994).

While the risk that a guardian may be acting contrary to a ward's wishes may support the rule that a guardian's power to initiate a dissolution proceeding must be specified by the legislature, this policy consideration does not justify requiring express statutory authority for a guardian to continue a ward's dissolution proceeding. When the ward has filed an action for dissolution of his or her marriage, the ward's desire and intention to end the marriage is clear. In the case at bar, the record reflects that Donald filed a petition to dissolve his marriage 14 months prior to his being adjudicated incompetent. Thus, the added protection afforded by the rule requiring specific statutory authority for a guardian to represent a ward in a dissolution proceeding is not necessary. Because the facts and analysis in *Drews* demonstrate that it is inapplicable to the circumstances of the instant case, we determine that *Drews* does not prohibit a guardian from continuing a ward's dissolution proceeding absent specific statutory authorization.

Courts in other jurisdictions have also refused to require that a guardian's power to continue a dissolution action filed by a ward be enumerated in a statute. Instead, our research indicates that those courts that

have considered this issue have held that a guardian's authority to continue a dissolution action on behalf of a ward may be implied from state statute. See, *e.g.*, *In re Parmer*, 755 S.W.2d 5 (Mo. App. 1988); *In re Ballard*, 93 Or. App. 463, 466, 762 P.2d 1051, 1052 (1988); *Wahlenmaier v. Wahlenmaier*, 750 S.W.2d 837, 839 (Tex. Ct. App. 1988). For example, in *Wahlenmaier*, the court held that a guardian could continue a dissolution action on behalf of a ward based on a state statute that gave mentally ill individuals the same constitutional and statutory rights as the nondisabled. The *Wahlenmaier* court concluded that

"since this statutory provision gives every person who has a mental incapacity every right and privilege guaranteed by our constitution and laws, it must include a right to obtain a divorce. It follows that, since the person may not be able to act for themselves, a court appointed guardian ad litem or next friend must be able to exercise those rights for a mentally ill person." *Wahlenmaier*, 750 S.W.2d at 839.

Similarly, the court in *Ballard* relied on a general statute that provided that, in any court proceeding in which an incapacitated person was a party, that person should appear by his or her conservator or guardian. The *Ballard* court decided that, because no different procedure is specified for dissolution proceedings, a guardian has the authority to continue a dissolution proceeding on behalf of a ward. *Ballard*, 93 Or. App. at 465, 762 P.2d at 1052.

Like the courts in *Ballard* and *Wahlenmaier*, we find in the case at bar that a guardian's authority to continue a dissolution action on behalf of a ward may be implied from section 11a—17. In construing a statute, we must ascertain and give effect to the intention of the legislature. See *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 368 (1998). In performing this inquiry, we begin with the language of the statute. See *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998).

Section 11a—17 of the Probate Act authorizes a

guardian to provide for the "support, care, comfort, health, education and maintenance" of a ward and requires the guardian to "assist the ward in the development of maximum self-reliance and independence." 755 ILCS 5/11a—17(a) (West 1996). Under this language, guardians have been permitted to make very personal decisions for wards. See, *e.g.*, *In re Estate of D.W.*, 134 Ill. App. 3d 788, 791 (1985) (guardian has authority to consent to abortion on behalf of ward); *In re Adoption of Savory*, 102 Ill. App. 3d 276, 277-78 (1981) (guardian has authority to consent to adoption of adult ward). We find that a guardian's authority to continue a dissolution proceeding on behalf of a ward is also encompassed within this broad description of a guardian's powers. The status of a ward's marriage impacts the ward's support, care, comfort, and development of self-reliance and independence. These are areas in which a guardian may be empowered to act under subsection (a).

The language of a 1997 amendment to section 11a—17 also indicates that the legislature intended a guardian to have the authority to continue a dissolution proceeding filed by a ward prior to an adjudication of disability. This amendment requires guardians to make decisions on behalf of a ward in accordance with the ward's previously expressed wishes:

"Decisions made by a guardian on behalf of a ward shall be made in accordance with the following standards for decision making. Decisions made by a guardian on behalf of a ward may be made by conforming as closely as possible to what the ward, if competent, would have done or intended under the circumstances, taking into account evidence that includes, but is not limited to, the ward's personal, philosophical, religious and moral beliefs, and ethical values relative to the decision to be made by the guardian. *Where possible, the guardian shall determine how the ward would have made a decision based on the ward's previously expressed preferences, and make decisions in accordance with the preferences of the ward.* If the ward's wishes are

unknown and remain unknown after reasonable efforts to discern them, the decision shall be made on the basis of the ward's best interests as determined by the guardian. In determining the ward's best interests, the guardian shall weigh the reason for and nature of the proposed action, the benefit or necessity of the action, the possible risks and other consequences of the proposed action, and any available alternatives and their risks, consequences and benefits, and shall take into account any other information, including the views of family and friends, that the guardian believes the ward would have considered if able to act for herself or himself." (Emphasis added.) 755 ILCS 5/11a—17(e) (West 1998).

By requiring guardians to act in accordance with their wards' desires in making personal decisions, subsection (e) contemplates that a guardian will have the authority to carry out the ward's wishes, including those expressed by a ward who filed a petition for dissolution of marriage. Based on the legislative intent contained in section 11a—17, we find that this statute authorizes a guardian to continue a dissolution of marriage action on behalf of a ward.

Our interpretation of section 11a—17 is supported by recent decisions in which Illinois courts have held that guardians must make personal decisions for their wards in accordance with the wards' wishes. In *In re Estate of Greenspan*, 137 Ill. 2d 1 (1990), for example, the guardian petitioned the court for permission to withdraw life-sustaining artificial nutrition and hydration being administered to the ward. This court stated that the ward had a right to refuse such life-sustaining medical treatment and that the guardian could exercise this right on the ward's behalf. *Greenspan*, 137 Ill. 2d at 16; see also *In re Estate of Longeway*, 133 Ill. 2d 33, 45-46 (1989). In addition, this court held that the guardian's exercise of the ward's right should be governed by the ward's previously expressed wishes on the subject. The *Greenspan* court stated that, generally, a guardian is required to act

in the ward's best interests. If, however, there is clear and convincing proof that the ward would have chosen to have life-support withdrawn, the guardian must act in accordance with these wishes, irrespective of the guardian's own judgment as to the ward's best interests. *Greenspan*, 137 Ill. 2d at 17-18. To do otherwise, the *Greenspan* court explained, would be to elevate "other parties' assessments of the meaning and value of life—or, at least, their assessments of what a reasonable individual would choose—over the affected individual's own common law right to refuse medical treatment." *Greenspan*, 137 Ill. 2d at 18; see also, *e.g.*, *In re C.E.*, 161 Ill. 2d 200 (1994) (a guardian may consent to the administration of psychotropic medication on behalf of a ward if a court finds, after considering the wishes of the recipient, that there is clear and convincing proof that the administration of the medicine outweighs its potential harmful effects); *In re Estate of Austwick*, 275 Ill. App. 3d 769 (1995) (a guardian may authorize the administration of electroconvulsive therapy to a ward upon a clear and convincing showing that the ward would have wanted this treatment).

Our decision in *Greenspan* supports Cronk's standing to continue Donald's dissolution action in this case. Like the decision to withdraw life-sustaining nutrition and hydration, a spouse's decision to terminate a marriage is intensely personal. By filing a petition for dissolution of marriage 14 months prior to his being adjudicated a disabled person, Donald made a clear and convincing showing of his choice to end his marriage. *Greenspan* requires that, when there is such proof of the ward's preferences, a guardian must act in accordance with those preferences. To deny Cronk standing to continue Donald's dissolution action would be to elevate other parties' assessments as to the value of Donald's marriage over his own expressed desire to end that marriage. Based on section

11a—17 and Illinois case law involving the scope of a guardian's authority, we hold that Cronk has standing to continue Donald's action to dissolve his marriage.

We observe that our holding is consistent with an amendment to section 11a—17 that became effective while this appeal was pending. After the appellate court issued its opinion in this case, the legislature amended section 11a—17 to specifically permit a guardian to continue a dissolution of marriage action on behalf of a ward in the circumstances presented here. Section 11a—17 now provides:

> "If the ward filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act before the ward was adjudicated a disabled person under this Article, the guardian of the ward's person and estate may maintain that action for dissolution of marriage on behalf of the ward." Pub. Act 91—139, eff. January 1, 2000 (amending 755 ILCS 5/11a—17 (West 1996)).

Neither party has argued, however, that this new section should have any application to the facts before us. Accordingly, we do not address whether amended section 11a—17 would apply to the instant case. See *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 172-73 (1999); *Schirmer v. Bear*, 174 Ill. 2d 63, 69 n.1 (1996).

Finally, we emphasize the limited nature of our holding. We decide only that Cronk has standing to continue a dissolution of marriage proceeding filed by Donald. Under section 11a—17, her actions are still subject to the supervision of the circuit court. See 755 ILCS 5/11a—17(a) (West 1996); see also *In re Estate of Wellman*, 174 Ill. 2d 335, 347 (1996) ("guardian only acts as the hand of the court and is at all times subject to the court's direction in the manner in which the guardian provides for the care and support of the disabled person"). In addition, we express no opinion as to the merits of Donald's action for dissolution of marriage. Whether a dissolution should be granted is a matter for the circuit court to

determine after appropriate proceedings under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 1996)).

CONCLUSION

For the foregoing reasons, we hold that a guardian has standing to pursue a dissolution of marriage action on behalf of a ward when the ward has filed the action prior to being adjudicated disabled. Accordingly, we reverse the judgment of the appellate court and remand the cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*cause remanded.*

JUSTICE RATHJE, specially concurring:

I agree with the majority that a plenary guardian of a disabled adult has standing to proceed with a dissolution of marriage action filed by the ward prior to the adjudication of the ward's disability. I cannot, however, join the majority's analysis, which is wholly unnecessary and irrelevant.

The majority spends 24 paragraphs resolving a simple issue that already has been decided. The molehill beneath the majority's mountain is section 11a—17(a—5) of the Probate Act of 1975 (Pub. Act 91—139, eff. January. 1, 2000 (amending 755 ILCS 5/11a—17 (West 1998)), which provides that:

"If the ward filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act before the ward was adjudicated a disabled person under this Article, the guardian of the ward's person and estate may maintain that action for dissolution of marriage on behalf of the ward."

This amendment was added by the legislature while this appeal was pending. The provision has an effective date of January 1, 2000.

When the legislature changes the law while an appeal

is pending, a reviewing court will apply the new law unless to do so would interfere with a vested right. *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 289 (1996); see also *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291, 295 (1999) (McMorrow, J., writing). Vested rights are interests protected from legislative interference by the due process clause (Ill. Const. 1970, art. I, § 2). *Armstead*, 171 Ill. 2d at 289. A right has not vested until it is "so far perfected that it cannot be taken away by legislation," and so "complete and unconditional" that it "may be equated with a property interest." *Armstead*, 171 Ill. 2d at 290-91.

Clearly, no vested right is impaired by application of the amended statute. The legislature merely clarified that the scope of a guardian's powers includes maintaining dissolution suits that were filed before the ward became disabled. Donald had a valid dissolution action pending against Sharron for over a year before he was adjudicated disabled. The legislation simply allows Donald's guardian to continue this action. Further, Sharron has not identified any vested right with which application of the new statute would interfere. Although the statute was not yet effective when the parties filed their appellate briefs, Donald noted in his brief that the legislature had proposed amendments to the statute and that applying the new statute would not interfere with a vested right. Sharron could have addressed this argument in her response brief but chose to ignore it. Sharron has not argued that a vested right would be impaired by application of the current law, and I am unable to discern one.

Nor is this the situation presented in *In re Marriage of Cohn*, 93 Ill. 2d 190 (1982), where the legislature violated separation of powers principles by passing legislation to overrule a decision of a reviewing court. In *Cohn*, we explained that, although the legislature may

change the law as interpreted by the courts prospectively, it cannot retroactively alter a statute in such a way that the statute itself overrules a decision of a reviewing court. In that case, the legislature sought to validate a bifurcated judgment in a divorce case by passing a statute allowing for such judgments. The statute was passed following the appellate court's decision vacating the judgment and included a provision that said, " 'All judgments for dissolution of marriage reserving any such questions entered prior to the effective date of this amendatory Act of 1981 are declared to be valid as of the date of entry.' " *Cohn*, 93 Ill. 2d at 201, quoting Ill. Rev. Stat. 1981, ch. 40, par. 401(3). Thus, the legislation itself would have changed the appellate court's decision. This court held that the legislature "invaded the province of the judiciary by retroactively overruling a decision of a reviewing court." *Cohn*, 93 Ill. 2d at 204.

Here, by contrast, the legislature did not attempt to change the decision of the appellate court. Although the amendment might have been proposed in response to the appellate court's decision, the legislature made no attempt to apply the statute to pending cases and gave the statute an effective date of January 1, 2000. In *Cohn*, we reiterated that the legislature can enact legislation for prospective application in pending cases so long as it does not attempt to tell a court how to apply the new law to the facts of a particular case. *Cohn*, 93 Ill. 2d at 205-06. What the legislature cannot do is attempt "to attribute to a statute, at the time of the reviewing court's opinion, a meaning different than that declared in the opinion." *Cohn*, 93 Ill. 2d at 206.

This case was argued at the September 1999 term of court. If the opinion had been issued before the end of the year, the new statute would not have been applicable. The case was not decided until January 2000, and by that time the new statute was in effect. The legislature

did not try to attempt to alter the meaning of the statute at the time the appellate court's opinion was issued and did not try to dictate to the courts how to apply the new law to pending cases. Accordingly, there is no separation of powers problem in applying the current law.

The majority's only reason for failing to apply the current law is that "Neither party has argued *** that this new section should have any application to the facts before us." 189 Ill. 2d at 281. I am unaware of any rule which holds that this state's highest court can apply the controlling law only if the parties cite it in their briefs. There never has been, and hopefully never will be, such a rule.

In sum, I concur with the majority's conclusion that a plenary guardian of a disabled adult has standing to maintain a dissolution action filed by the ward prior to the adjudication of the ward's disability. I do so not for the reasons stated in the majority opinion, but because a controlling statute specifically answers this question.