# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Karbin v. Karbin*, 2011 IL App (1st) 101545

---

| | |
|---|---|
| Appellate Court Caption | JAN KARBIN, Petitioner and Cross-Respondent-Appellee, v. MARCIA LOVENSON KARBIN, By and Through Her Guardian, Kara Hibler, Respondent and Cross-Petitioner-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1–10–1545 |
| Filed | June 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a husband filed a petition for the dissolution of his marriage to a disabled person and the disabled person's plenary guardian filed a counterpetition for dissolution, the trial court properly dismissed the guardian's petition after the husband voluntarily dismissed his petition and left the guardian's petition as the only pending dissolution petition, since the Illinois Supreme Court's rulings in *Drews* and *Burgess* that a plenary guardian does not have authority to seek a dissolution of marriage on behalf of award applied to the instant case, and the language of section 11a–17 of the Probate Act authorizing a guardian to "maintain" a dissolution action if the ward filed a petition for dissolution before being adjudicated a disabled person could not be construed as giving the guardian authority to proceed with seeking a dissolution. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07–D–11313; the Hon. William S. Boyd, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, and Linda A. Bryceland, of Monahan & Cohen, both of Chicago, for appellant.

Jordan B. Rifis, of Law Offices of Jordan B. Rifis, PC, and Andrea M. Button Ott, of Law Offices of Andrea M.B. Ott, LLC, both of Oak Park, for appellee.

Panel

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justice McBride concurred in the judgment and opinion.

Justice Cahill dissented, with opinion

## OPINION

¶ 1    Jan Karbin, the husband, filed a petition for dissolution of marriage from his disabled wife, Marcia Lovenson Karbin. The wife's plenary guardian, Kara Hibler, filed a counterpetition for dissolution. Thereafter, the husband dismissed his petition and filed a motion to dismiss the wife's counterpetition based on two Illinois Supreme Court decisions that bar a disabled person from initiating a dissolution of marriage. The circuit court agreed that the decisions applied here and dismissed the wife's counterpetition. The guardian claims that a disabled person should be allowed to pursue a dissolution of marriage where procedural and substantiative safeguards can be met at a best interest hearing. The guardian argues the supreme court cases that stand as a bar to a guardian proceeding on behalf of a disabled spouse as a petitioner in a dissolution petition are outdated and should be deemed inapplicable when it can be shown that a dissolution of marriage is consonant with the best interest of the disabled person. There is force to this argument. However, we cannot distinguish the clear precedents of our supreme court on the proffered basis that a best interest hearing provides adequate safeguards to permit a guardian to pursue a petition for dissolution of marriage on behalf of a disabled person. Given the clear holdings of the supreme court, only the legislature can provide the statutory authority the guardian seeks. We affirm.

¶ 2                                    BACKGROUND

¶ 3    The parties were married on June 2, 1984. They have two children; one born to them, a son, Jacob, who suffers from mental disability and lives in a full-time care facility, and a daughter, Kara, Marcia's daughter from a previous marriage, whom Jan adopted during the parties' marriage.

¶ 4    After almost 14 years of marriage, Marcia suffered brain damage and became severely

disabled after a car accident. Her disability requires full-time care. Jan was appointed plenary guardian in 1997. While he was guardian, Jan established an annuity for Marcia out of the proceeds of the large settlement award stemming from the car accident. The annuity provides for Marcia's lifetime care.

¶ 5 Jan suffers from Parkinson's disease and, in 2004, agreed to transfer his plenary guardianship of Marcia to their daughter, Kara, because he could no longer care for Marcia. At the time of the guardianship transfer, the agreed order contained an agreement between the parties regarding the distribution of funds upon the sale of the marital home. With the approval of the guardianship transfer, the probate court approved a six-page settlement agreement signed by the parties. After the transfer, Marcia left Illinois with her daughter and now guardian, Kara.

¶ 6 At the time of the proceedings below, Marcia lived in a condominium in Ohio. When Jan filed his dissolution petition, he was living with another woman in a townhouse in Illinois. They jointly own the townhouse. The guardian claims that Jan is romantically involved with the woman he resides with. Jan refutes any romantic involvement; he characterizes the co-owner of the townhouse as his live-in caretaker.

¶ 7 In November 2007, Jan filed a petition for dissolution of marriage. Jan claims he did so at the request of Marcia's guardian with an understanding that the dissolution action would be "uncontested and routine." He claims they agreed that each party would retain the assets they possessed at that time of filing and each would be responsible for their respective debts.

¶ 8 In May 2008, Marcia, through her plenary guardian, filed a counterpetition for dissolution. Jan answered and discovery ensued.

¶ 9 The parties exchanged disclosure of assets and liabilities under Cook County Circuit Court Rule 13.3.1 (eff. Jan. 1, 2003). Jan claims his 2007 and 2008 income statements showed his monthly income had decreased because Parkinson's disease prevents him from working. He claims he provided the guardian with proof that he receives federal disability benefits, which supplement his retirement funds.

¶ 10 On May 5, 2009, Marcia's guardian filed a motion to compel discovery, alleging Jan's disclosure statement was incomplete. The guardian claimed Jan failed to provide statements from a joint savings account, supporting tax forms for his 2007 and 2008 tax filings, annual statements from the settlement annuity, and documents regarding a $20,000 investment Jan made in Digital Campaign, Inc. The guardian alleged Jan acted "willfully and contumaciously" in failing to comply with her discovery requests. Jan "vigorously denied" the guardian's allegations.

¶ 11 Following the filing of the motion to compel discovery, Jan sought leave to voluntarily dismiss his petition for dissolution, alleging it was never his "wish to divorce his wife but [he] was willing to accommodate the wishes of the wife's daughter [and] *** guardian." Jan further alleged the guardian had ignored his proposed "Marital Settlement Agreement" in favor of seeking additional discovery. According to the motion, the additional discovery the guardian demanded was expensive and caused him distress, which negatively affected his health. The guardian responded that Jan sought dismissal of his dissolution petition to avoid disclosing his assets.

¶ 12    In July 2009, the trial court granted Jan's request to voluntarily dismiss his petition for dissolution. The dismissal order provided that henceforth Marcia would be designated the petitioner in the parties' dissolution action.

¶ 13    On September 16, 2009, Jan filed an emergency motion to appoint a guardian *ad litem* to determine whether Marcia wished to be divorced from him. Because the court deemed it not an emergency, the court made no ruling on the motion. On September 25, 2009, Jan filed a second motion seeking the appointment of a guardian *ad litem*. On October 7, 2009, the court determined that Jan's motion should be filed in probate court, which Jan did on October 19, 2009.

¶ 14    On January 5, 2010, without addressing Jan's request to appoint a guardian *ad litem*, the probate court entered an order concluding that "Guardian Kara Hibler has no authority to prosecute a petition for dissolution of marriage."

¶ 15    Thereafter, Jan moved before the divorce court to strike and dismiss Marcia's dissolution action. Jan attached an affidavit averring that Marcia had indicated she did not wish to be divorced from him. The parties filed briefs on the issue of the guardian's authority to proceed with the only dissolution petition pending.

¶ 16    On April 30, 2010, in a written order, the divorce court granted Jan's motion to dismiss Marcia's petition for dissolution of marriage. The court determined that under two supreme court cases, the plenary guardian had no authority to prosecute the petition.

¶ 17    Marcia's guardian timely appeals.

¶ 18                                    ANALYSIS

¶ 19    In *In re Marriage of Drews*, 115 Ill. 2d 201, 203-04 (1986), the Illinois Supreme Court addressed the issue: "Does a plenary guardian of a disabled adult have standing to maintain an action for the dissolution of a ward's marriage?" The issue had been resolved in many decisions from other jurisdictions. "We begin by noting that the issue before us is not novel. It has been addressed over the years by the courts of a number of jurisdictions. Research reveals a strong majority rule that, absent statutory authorization, a guardian cannot maintain an action, on behalf of a ward, for the dissolution of a ward's marriage. [Citations.]" *Id.* at 203. The court noted that Illinois had adopted this majority position early in our jurisprudence, citing *Pyott v. Pyott*, 191 Ill. 280, 288 (1901), and *Iago v. Iago*, 168 Ill. 339, 341 (1897), though the rule was not applied in either case. In *Pyott*, "the guardian sought annulment, not dissolution, of the ward's marriage." *Drews*, 115 Ill. 2d at 204. In *Iago*, "the guardian was defending, not maintaining, an action for dissolution brought against the ward." *Id.* at 204-05. Nonetheless, the court concluded "Illinois follows the majority rule." *Id.* at 205. The court explained its interpretation of the authority granted in section 11a–18(c) of the Probate Act of 1975 (Act) as authorizing a plenary guardian to act on behalf of a ward in all legal proceedings that are *financial*, but not *personal*, in nature. *Id.* at 206; Ill. Rev. Stat. 1983, ch. 110 1/2, ¶ 11a–18(c) (now 755 ILCS 5/11a–18 (West 2008)).

¶ 20    Much as the guardian argues before us, Justice Simon argued in dissent that "both the statute and our case law have always held that 'the primary consideration is the best interest of the incompetent.' [Citations.] *** By dismissing this action before determining whether

-4-

the claim alleged was in the best interest of the ward, the circuit court has avoided its obligation to keep the interest of the ward paramount." *Drews*, 115 Ill. 2d at 207-08 (Simon, J., dissenting) (quoting *Kinnett v. Hood*, 25 Ill. 2d 600, 602 (1962)).

¶ 21    In *In re Marriage of Burgess*, 189 Ill. 2d 270 (2000), our supreme court determined that the bar in *Drews* does not apply to a dissolution petition that was filed before a guardian is appointed for the petitioning spouse.

> "[W]e find that the strict rule adopted in *Drews*, requiring express statutory authority for a guardian to act, should not be applied in this case. ***
>
> The issue presented in the case currently before us was not decided in *Drews*. Whereas *Drews* involved a guardian's power to *initiate* dissolution of marriage proceedings on behalf of a ward, [the petitioner's] case concerns a guardian's authority to *continue* a ward's dissolution of marriage action." (Emphasis in original.) *Id.* at 274-75.

The court held that policy reasons underlying the decision in *Drews* "are particular to the facts in that case and are inapposite in the circumstances presented by the instant case." *Id.* at 275.

¶ 22    The guardian argues that the limitation on a guardian's authority based on the dichotomy between financial and personal matters has been undermined in a recent decision of this court, citing *In re Estate of K.E.J.*, 382 Ill. App. 3d 401 (2008). The guardian contends that this "modern case law" allows a guardian to consent to personal decisions so long as procedural and substantive safeguards are met at a best interest hearing. She claims the record here shows that it is in Marcia's best interest to be divorced from Jan and the circuit court erred in dismissing her petition without first conducting a best interest hearing. She argues the parties' incompatible views of the case compel an examination of the best interest of Marcia by the circuit court before the guardian can be barred from pursuing the dissolution petition. The guardian contends the circuit court erred in its application of the blanket prohibition announced in *Drews*. She urges that a best interest exception should be read into the *Burgess* decision, which found "the strict rule adopted in *Drews*" did not apply under the particular facts presented. *Burgess*, 189 Ill. 2d at 274.

¶ 23    While the facts in this case may implicate different policy reasons than in *Drews* in light of Jan's filing of a petition for dissolution of marriage only to dismiss it after the guardian filed a counterpetition, as our colleague in dissent observes, once the guardian's counterpetition became the only petition pending, we can find no meaningful distinction with the issue resolved in *Drews*. As the supreme court stated in *Burgess*, "*Drews* involved a guardian's power to *initiate* dissolution of marriage proceedings on behalf of a ward." (Emphasis in original.) *Id.* If we were to uphold the guardian's authority to proceed with the petition in this case, where the guardian initiated the counterpetition for dissolution of marriage and it then became the only petition pending following the dismissal of Jan's petition, there would be little left to the policy reason that girds the rule that a guardian may not *initiate* a dissolution petition on behalf of a ward. A dissolution action remains *personal* in nature. See *Drews*, 115 Ill. 2d at 206. The authority the guardian needs to proceed with a dissolution of marriage, after she filed a counterpetition to Jan's petition and Jan dismissed

-5-

his petition, cannot be found in the Act as it has been interpreted by *Drews* and *Burgess*, even in the face of the guardian's contention that a hearing would demonstrate that the best interest of Marcia favors permitting her dissolution petition to go forward.

¶ 24 We note that after the appellate court issued its opinion in *Burgess,* which applied the *Drews* decision to preclude a dissolution action then pending and which contained a special concurrence emphasizing "the strong legal and public policy reasons for allowing a disabled adult plenary guardian to continue a dissolution of marriage originally filed by the disabled adult" (*In re Marriage of Burgess*, 302 Ill. App. 3d 807, 812 (1998) (Tully, J., specially concurring)), the legislature amended the probate statute, effective January 1, 2000, granting a guardian the specific authority to *continue* a dissolution proceeding filed prior to a plenary guardian being appointed. 755 ILCS 5/11a–17 (West 2008). This amendment prompted a special concurrence to the supreme court's decision permitting the dissolution action to continue as "wholly unnecessary and irrelevant." *Burgess*, 189 Ill. 2d at 282 (Rathje, J., specially concurring).

¶ 25 Section 11a–17 of the Act was amended to authorize a guardian to "maintain" a dissolution action "[i]f the ward filed a petition for dissolution of marriage *** before the ward was adjudicated a disabled person." 755 ILCS 5/11a–17(a–5) (West 2008). We cannot read into this narrow authority to "maintain" a dissolution action the authority of a guardian to continue with a counterpetition for dissolution after the initial petition for dissolution by the nondisabled spouse is dismissed.

¶ 26 We find the circumstances in this case to be indistinguishable from the circumstances where the guardian files "an action, on behalf of a ward, for the dissolution of a ward's marriage." See *Drews*, 115 Ill. 2d at 203. Had the legislature intended to grant a guardian the broader duty to proceed to conclusion on a counterpetition for dissolution of marriage, after it is converted to the sole petition for dissolution, the legislature would have done so. We cannot read such authority into the statute. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 184 (2007) ("There is no rule of statutory construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute says." (citing *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320-21 (2003))).

¶ 27 We can only suggest that the legislature once again amend the statute to permit a dissolution of marriage by a ward under the circumstances present in this case, consistent with the position taken by Justice Simon in his dissent in *Drews*. *Drews*, 115 Ill. 2d at 208 (Simon, J., dissenting); see *Village of Bellwood v. American National Bank & Trust Co. of Chicago*, 2011 Il App (1st) 093115, ¶ 41 (Cunningham, J., specially concurring) (advocating the legislature "craft language to prevent unintended consequences and unfair results").

¶ 28 We also note the "strong majority rule," recognized and followed by the *Drews* court in 1986, may not be so "strong." See, *e.g.*, *In re Salesky*, 958 A.2d 948, 953–54 (N.H. 2008) (under the New Hampshire statutory scheme, a probate court may enlarge the guardian's duties: "The only limitation upon the probate court's authority to impose additional duties upon a guardian is that the duties be 'desirable for the best interests of the ward.' "); *In re Marriage of Ruvalcaba*, 850 P.2d 674, 682 (Ariz. Ct. App. 1993) (the court allowed the guardian to initiate the dissolution proceeding on behalf of the ward and applied the

"substituted judgment" standard to determine if dissolution was warranted because the ward manifested an intent to be divorced while competent); *In re Marriage of Gannon*, 702 P.2d 465, 467 (Wash. 1985) (As a general rule, a guardian cannot initiate a dissolution proceeding because marriage is too personal, but there may be circumstances in which this may be authorized: "Unless this course of action is available, the competent party is vested with absolute, final control over the marriage. This is not equitable. *** [Citations.] In such situations the court's primary consideration must be the best interests of the ward, although the court must also bear in mind possible legal obligations to a spouse.").

¶ 29                                    CONCLUSION

¶ 30    Like the circuit court below, we are constrained by our supreme court's decisions in *Drews* and *Burgess* to rule that a plenary guardian does not have authority to seek a dissolution of marriage on behalf of her ward when the counterpetition for dissolution filed on behalf of the ward becomes the only dissolution petition pending. The judgment of the circuit court is affirmed.

¶ 31    Affirmed.


¶ 32    JUSTICE CAHILL, dissenting:

¶ 33    The majority believes *In re Marriage of Drews*, 115 Ill. 2d 201 (1986), prohibits a guardian from filing a counterpetition for dissolution of marriage on behalf of a ward if the non-disabled spouse dismisses the original petition. Apparently, if the non-disabled spouse had persisted in his petition, the guardian would be allowed to continue to defend on the ward's behalf, which would include the power to make decisions the guardian believes to be in the best interest of the ward.

¶ 34    If this is so, I believe *Drews* can be limited to cases initiated by the guardian of the disabled spouse. I would remand this case with directions to the trial court to decide whether the counterpetition filed by the guardian is in the best interest of the ward.